IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD E. HORNE, | ) | |
| VICTOR A. HORNE, | ) | Case No. 05-0497-CV-W-NKL |
| K.C. 1986 LIMITED PARTNERSHIP, | ) | |
| DEH MERRYWOOD COMPANY, | ) | |
| DONALD D. BOATRIGHT, AND, | ) | |
| DeANGELO BROTHERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Pending before the Court is Plaintiff United States of America's ("USA") Motion

for Partial Summary Judgment [Doc. # 41]. For the reasons set forth below, the Motion

will be granted in part.

I.      **Introduction**

This suit is the latest development in nearly ten years of litigation before this Court

concerning the clean-up of toxic substances at the Armour Road Superfund Site in North

Kansas City, Missouri. In *K.C. 1986 Limited Partnership v. Reade Manufacturing*, Case

No. 02-853-CV-W-NKL, (hereinafter "the Contribution Litigation"), this Court found

that Defendants Victor Horne and Donald Horne ("Horne Brothers" collectively), Donald

Boatright ("Boatright"), and DeAngelo Brothers, Inc. ("DeAngelo Bros."), were liable as

1

"operators" of the Armor Road Site under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607. In the same case, the Court also found that K.C. 1986 Limited Partnership ("K.C. 1986") and DeAngelo Bros. were liable as "owners" of the Armor Road Site under section 107(a).

Following the determination of liability, the Contribution Litigation went on to apportion financial responsibility among the parties for costs incurred by U.S. Borax, Inc., to clean-up the contaminated soil at the Armour Road Site. The present litigation involves the USA's attempt to recover from the same parties its own supplemental response costs incurred in cleaning up the Armour Road Site. In its Motion for Summary Judgment, the USA moves the Court to hold the Defendants collaterally estopped from denying their liability as owners and operators of the Armour Road Site.

## II.    Discussion

Under the doctrine of offensive collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *United States v. Gurley*, 43 F.3d 1188, 1198 (8th Cir. 1994) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979). Collateral estoppel is appropriate only in cases where the same issue was actually litigated in a previous case and determined by a valid final judgment in which the Court's resolution of that issue was essential. *Farmland Indus., Inc. v. Morrison-Quirk Grain Corp.*, 987 F.2d 1335, 1339

(8th Cir. 1993). The party to be estopped (or another party in privity with it) must have had a full and fair opportunity to litigate the issue in the earlier case. *Id.*

### A. Donald and Victor Horne, DeAngelo Bros., and K.C. 1986

The USA argues that the issue of Defendants' liability as owners and/or operators of the Armour Road Site in this case is identical to the issue of their liability in the Contribution Litigation, that Defendants had a full and fair opportunity to litigate their liability in that case, that this Court reached a valid final judgment finding them liable, and that their status as owners and/or operators was essential to the judgment. The Court agrees with the USA that Defendants Donald and Victor Horne, DeAngelo Bros., and K.C. 1986 should be estopped from denying their status as owners and/or operators.

The Horne Brothers and DeAngelo Bros. were found liable as "operators" of the Armour Road Site, and K.C. 1986 and DeAngelo Bros. were found liable as "owners" of the Armour Road Site in the Court's May 7, 2004, Order, which became a valid final judgment on April 4, 2005.[1] Essential to that judgment of owner/operator liability under CERCLA § 107 were findings by the Court that the Amour Road Site was a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9); that materials located at the Armour Road Site included "hazardous substances" and/or "pollutants or contaminants which may present an imminent and substantial danger to the public health or welfare," within the meaning of sections 101(14), 104, 106, and 107 of CERCLA, 42 U.S.C. §§ 9601(14), 9604, 9606, and 9607; and that a "release" or threatened release of

---

[1]That the judgment is on appeal before the Eighth Circuit does not undermine its finality for collateral estoppel purposes. *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988).

3

"hazardous substances" into the environment occurred at or from the Armour Road Site, as those terms are defined in sections 101(14) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(14) and 9601(22).

The Court, therefore, concludes that Defendants Donald and Victor Horne, DeAngelo Bros., and K.C. 1986 are estopped from denying these facts.

**B.     DEH Merrywood.**

As to Defendant DEH Merrywood, the Court cannot grant preclusive effect. DEH Merrywood's liability as an "owner" was not actually decided in the Contribution Litigation. Review of the Court's May 7, 2004, Order indicates that the Court found DEH Merrywood to be the general partner of K.C. 1986, owning a 1 percent partnership interest. The other 99 percent interest was held by Donald Horne, who also happens to be the sole shareholder, officer, director, and executive of DEH Merrywood. While the Court found K.C. 1986 and Donald Horne liable as an owner and operator, respectively, it made no finding with respect to DEH Merrywood's liability. Similarly, the Court did not apportion any share of Borax's costs to DEH Merrywood in its January 7, 2005, Allocation Order [Doc. 399]. As there was no Order finding DEH Merrywood liable as an owner, there is no final judgment which could be used to estop DEH Merrywood from denying its status as one now.

**C.     Boatright**

Boatright presents a slightly different problem. Unlike DEH Merrywood, the Court did find Boatright liable as an "operator" of the Armour Road Site in its May 7,

2004, Partial Summary Judgment Order.  However, following that finding, Boatright eventually settled his case with Borax and was dismissed from the Contribution Litigation through a Rule 41 stipulated dismissal on August 30, 2004 [Doc. 357].  Thus, Boatright's liability was not part of the Court's final judgment on April 4, 2005 [Doc. 428].

The USA argues that the Summary Judgment Order of May 7, 2004, is sufficiently final to warrant preclusive effect.  It cites *In re Nangle*, in which the Eighth Circuit held that a bankruptcy petitioner was collaterally estopped from denying that a debt resulted from "willful and malicious conduct" because the Missouri state court contempt order that created the debt had found his efforts to impede the execution of a foreign judgment to be willful.  274 F.3d 481, 484 (8th Cir. 2001).  Even though the contempt order had not yet been enforced and was therefore not subject to appeal, the Eighth Circuit noted that "recent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief . . . ."  *Id.* at 484-85 (internal quotations omitted).  That Court further noted that for the purposes of collateral estoppel, a judgment must simply be "sufficiently firm to be accorded conclusive effect."  *Id.* at 485.  "This may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id*. (internal quotations omitted).

Case 4:05-cv-00497-NKL   Document 76   Filed 02/06/06   Page 5 of 17

The language used by the Eighth Circuit in *In re Nangle* to broaden the definition of "final judgment" for collateral estoppel purposes was quoted without direct citation from a Second Circuit opinion by Judge Friendly. *See Lummus Co. v. Commonwealth Oil Refining* Co., 297 F.2d 80, 89 (2nd Cir. 1961). *Lummus* gave preclusive effect to a Puerto Rico District Court's preliminary injunction order that, although not a final judgment, had been affirmed by the First Circuit on interlocutory appeal. Writing for a three judge panel, Judge Friendly held that "Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus*, 297 F.2d at 89.

While not directly refuting the reasoning of *Lummus/Nangle*, Boatright argues that "[d]ismissal without prejudice operates to leave the parties as if no action had been brought at all." *Moore v. St. Louis Music Supply, Co.*, 539 F.2d 1191, 1194 (8th Cir. 1976). There is support for Boatright's position in *In re Piper Aircraft Distribution System Antitrust Litigation*, in which the Eighth Circuit held that a Florida District Court's Order denying class certification in a case, which was subsequently dismissed without prejudice by the plaintiff under Fed. R. Civ. P. 41(a), did not preclude relitigation of the class certification issue in a Missouri District Court. 551 F.2d 213, 221 (8th Cir.

6

1977).  The Court of Appeals was sympathetic to the judicial economy that estoppel would promote, but it found that dismissal without prejudice rendered the certification Order a nullity.  *Id.*  The Plaintiff's voluntary dismissal, wrote the Eighth Circuit, "carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim."  *Id.* at 219 (citing 27 C.J.S. Dismissal and Nonsuit § 37 (1959)).

In re Piper went on to distinguish the *Lummus* line of cases: "Whatever merit the Second Circuit's test might have, and however useful it might be in a case in which the conclusiveness of a preliminary order is subject to doubt, it has no application here.  The crucial fact is that [Plaintiff] dismissed the Florida action without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(I)."  *Id.* at 220, n. 11.  This distinction undermines Boatright's argument.  In the Contribution Litigation, Borax's claims against Boatright were dismissed without prejudice only as to any costs Borax may yet incur "implementing a groundwater remedy and/or off-Site work, if any, required by EPA in the future to address soil or groundwater contamination . . . ."  Stipulated Dismissal [Doc. # 357] at 2, Contribution Litigation (Aug. 30, 2004).  The rest of Borax's claims were dismissed with prejudice to the extent those claims related to:

> (i) all costs relating to the Armour Road Superfund Site (the "Site") that have been incurred by Borax prior to the date of this Agreement, (ii) all costs that may be incurred by Borax implementing and completing the work required by EPA as set forth in the Consent Decree, entered by the Court on June 3, 2004, and documents referenced therein, and (iii) all costs that may be incurred by Borax meeting any EPA requirement for work on the Site prior to any decision by EPA to require a groundwater remedy for or relating to the Site, including, without limitation, groundwater monitoring

7

and preparing any report, such as a Remedial Investigation/Feasibility
Study, relating to groundwater issues at the Site.

*Id.* That is to say, Borax dismissed without prejudice only those claims for response costs

not yet incurred and which it was not yet pursuing even against the other Defendants.

Since the claims on which Borax won a partial summary judgment against Boatright–and

on which it eventually recovered from the other Defendants–were the same claims it

dismissed with prejudice, it is hard to say the settlement and dismissal really left "the

parties as if no action had been brought at all." On the contrary, Boatright gave up his

chance to appeal the Court's May 7, 2004, Partial Summary Judgment Order in exchange

for Borax's Rule 41 dismissal with prejudice. There is no reason to think the parties did

not consider the May 7, 2004, Order to be the final adjudication of Boatright's status as

an "operator" of the Armour Road Site.

The more expansive definition of "finality" from the *Lummus* line of cases seems

the more prevalent approach within the Eighth Circuit. In *In re DEF Invs., Inc.*, 186 B.R.

671, 683 (Bankr. D. Minn. 1995), the Bankruptcy Court noted that the requirement of

finality "is often stated in broad general terms and loosely applied." *Id.* at 683.

Borrowing heavily from the Second Circuit, the Bankruptcy Court held that a final

judgment for collateral estoppel purposes "includes any judicial decision upon a question

of fact or law which is not provisional and subject to future change by the same tribunal."

*Id.* (citing *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2nd Cir. 1964). While the Eighth

Circuit itself has not explicitly followed *Lummus,* Judge Friendly's approach has been

adopted by the Eleventh Circuit, *see Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir.

2000), and by the Seventh Circuit, which has held that "[t]o be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment [by that court]." *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (granting preclusive effect to an interlocutory order that was "necessarily based upon a determination that constitute[d] an insuperable obstacle to the [party's] success on the merits").

In the Court's research of relevant caselaw, only the Fifth Circuit seems to routinely reject the *Lummus* approach. In *Avondale Shipyards, Inc. v. Insured Lloyd's*, the Fifth Circuit held that a partial summary judgment order from a previous suit that eventually settled was insufficiently final to warrant collateral estoppel. 786 F.2d 1265 (5th Cir. 1986). In the first suit, a shipyard worker sued under the Longshore and Harbor Workers Compensation Act ("LHWCA") for injuries sustained at work. *Id.* at 1267. The trial court entered a partial summary judgment order finding the ship under construction was a "vessel" under the LHWCA and was under the control of the Defendant. *Id.* at 1268. The parties eventually settled and the Court issued a final judgment approving of the settlement. *Id.* The Defendant then sued its insurer for indemnification in the first case, but the insurer defended on a "watercraft" exception, seeking collateral estoppel as to whether the ship was a "vessel" under the insurance policy. The trial court found estoppel based on the partial summary judgment order, but the Fifth Circuit reversed, holding that "an order granting partial summary judgment "has no res judicata or collateral estoppel effect." *Id.* at 1272. *Accord Golman v. Tesoro Drilling Corp.*, 700

F.2d 249, 253 (5th Cir. 1983)("An order granting partial summary judgment is interlocutory; it has no res judicata or collateral estoppel effect.").

Given the Eighth Circuit's implicit approval of Judge Friendly's reasoning in *Lummus*, albeit filtered through several intermediary cases, and given the prevalence of his approach both in Eighth Circuit Bankruptcy Courts and other Circuit Courts of Appeals, this Court will apply the factors enumerated in *Lummus* to the present case. In determining whether the May 7, 2004, Partial Summary Judgment Order in the Contribution Litigation was sufficiently final to preclude Boatright from relitigating his status as an "operator" under CERCLA, the Court will consider "[1] the nature of the decision (i.e., [whether] it was not avowedly tentative), [2] the adequacy of the hearing, and [3] the opportunity for review." *Lummus*, 297 F.2d 80, 89 (2d Cir. 1961).

First, the Court's May 7, 2004, Order granting Partial Summary Judgment was not avowedly tentative. On the contrary, the Court began its discussion of Borax's claims against Boatright with the observation, "There is no question that Boatright and Donald Horne are "operators" under CERCLA." May 7, 2004, Order at 36 [Doc. # 283] Contribution Litigation. Far from tentative, the May 7, 2004, Order definitively resolved one of the major elements in Borax's *prima facie* case; namely, the Defendants' status as "operators" under CERLA. *See* Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."). The Court reasoned:

> Because the Defendants have conceded that Boatright . . . w[as] directly
> responsible for and actively involved in making critical decisions regarding

10

> the procedures related to the handling of hazardous waste at the Property,
> no reasonable finder of fact could conclude that [he] did not "manage,
> direct, or conduct operations specifically related to pollution, that is,
> operations having to do with the leakage or disposal of hazardous waste, or
> decisions about compliance with environmental regulations. . . .
> Accordingly, summary judgment will be granted in Borax's favor as to
> Boatright's . . . "operator" liability.

May 7, 2004, Order at 36-37. As Boatright's own testimony and concessions rendered him an "operator" as a matter of law, there is little reason to characterize the decision as tentative.

Judge Friendly's second prong, the adequacy of the hearing, is closely related to collateral estoppel's general requirement that the party to be estopped had a full and fair opportunity to litigate the issue. Boatright filed Suggestions in Opposition [Doc. # 238] to Borax's Motion for Summary Judgment [Doc. # 218] against him, admitting to the factual statements which would ultimately render him an "operator" as a matter of law. He also filed his own Motion for Summary Judgment [Doc. # 189] against Borax based on a preempted state law statute of limitations. Boatright had an adequate opportunity to litigate the issue of his status as an operator and lost.

The final factor, opportunity for review, is also satisfied in the Contribution Litigation. Although the Court found Boatright to be an Operator on May 7, 2004, the claims against him were not dismissed for over three months. At no time did he move the Court to reconsider or for relief from the Order under Rule 60(b). And although he waived it in his settlement with Borax, Boatright would have had the right to appeal the May 7, 2004, Order, as evidenced by Defendant Donald Horne's pending appeal before

the Eighth Circuit, Case No. 05-2064. Where review was available but not sought, estoppel applies. *McNeil v. National Football League*, 790 F. Supp. 871, 894 (D. Minn. 1992). The Court, therefore, concludes that its May 7, 2004, Order was sufficiently final to preclude Boatright from relitigating his status as an "operator" of the Armour Road Site.

**D.     Miscellaneous Arguments**

Defendants raise several other objections to the application of collateral estoppel. First, They argue that there is a genuine dispute of material fact as to whether the USA has incurred costs for actions taken in response to the release or threatened release of hazardous substances from the site. Further, they argue that the USA has not proved that its alleged response costs were "not inconsistent with the National Contingency Plan" (NCP) as provided in CERCLA § 107(a)(4)(A). Defendants are correct that the USA has offered no evidence within the briefing of the present Motion to prove that it has incurred response costs consistent with the NCP. While this absence does preclude collateral estoppel on the ultimate issue of their liability, it does not preclude collateral estoppel on the smaller issue of Defendants' status as "owners" and/or "operators" of a "facility" containing "hazardous substances" and/or "pollutants or contaminants which may present an imminent and substantial danger to the public health or welfare," on or from which a "release" has occurred within the meaning of CERCLA § 107. As to those three elements[2] of the USA's *prima facie* case, the Defendants are estopped. The fourth

_____

[2]To establish a *prima facie* case of liability under CERCLA, plaintiffs must establish four elements: (1) the site is a "facility," (2) a "release" or "threatened release" of a "hazardous

element, that the USA has incurred costs, is the subject of another summary judgment motion by the USA.

Defendants also argue that they were found only severally liable under CERCLA § 113(f) in the Contribution Litigation; whereas, the USA seeks to hold them joint and severally liable under § 107(a) in the present case. Thus, claim Defendants, collateral estoppel would be inappropriate because the issue of joint and several liability was not actually litigated in the previous case. In support of this position, Defendants cite *Cooper Indus. v. Aviall Servs.*, in which the Supreme Court noted in dicta that

> § 107 and § 113 created similar and somewhat overlapping remedies. The cost recovery remedy of § 107(a)(4)(B) and the contribution remedy of § 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct.

543 U.S. 157, 163 n. 3 (2004) (internal quotations omitted). Defendants also cite the Second Circuit's opinion in *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, which held that:

> [I]t no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a). Each of those sections, 107(a) and 113(f)(1), embodies a mechanism for cost recovery available to persons in different procedural circumstances.

423 F.3d 90, 99 (2nd Cir. 2005). As such, Defendants claim, the issue of joint and several liability was not actually litigated in the previous case.

---

substance" has occurred on or from the site, (3) the release or threatened release has caused the USA to incur response costs, and (4) the Defendants fall within at least one of the four classes of responsible persons described in section 9607(a). *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1379 (8th Cir. 1989).

Defendants' argument is unavailing. Section 113 provides that: "Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) during or following any civil action under section 106 or under section 107(a) . . . ." 42 U.S.C.A. § 9613(f)(1). Thus, any party found liable under section 113 must necessarily be a "person who is liable or potentially liable under section 107(a)." Moreover, *Consolidated Edison Cos.* held only that a contribution claim could be pursued by one potentially responsible party against another under section 107(a) itself rather than under section 113(f). 423 F.3d at 99. And in any event, the Contribution Litigation between the current Defendants was an action under both sections 107(a) and 113(f).

Even if it weren't, there would still be no difference between that case and this one with regard to the Defendants' status as "owners" and/or "operators," the site's status as a "facility," or the fact that there was a "release" of "hazardous substances" on or from the site. While joint liability is indeed different than several liability, the fact that these three elements of the USA's case led to only several liability in the previous case is no grounds for denying them preclusive effect in this one. Defendants' argument is akin to saying that facts necessary to a ten million dollar judgment cannot be given preclusive effect in a second case seeking eleven million dollars because the Defendants only had to pay ten million in the first case. Such a rule would eviscerate the doctrine of collateral estoppel.

Next, Defendants argue that collateral estoppel as to liability is precluded by the affirmative defense of divisibility of harm. To the extent that such a defense is available to the Defendants, however, it has no bearing on whether they were owners and/or

14

operators of a facility on or from which hazardous substances were released since none of these three elements contains a causation requirement. *See United States v. Hercules, Inc.*, 247 F.3d 706, 716 (8th Cir. 2001). The Court does not decide today whether the allocation proceeding and Order in the Contribution Litigation resolved the issue of divisibility through equitable apportionment. It need not decide that issue to bar relitigation of the first three elements of the USA's case.

Finally, Defendants DeAngelo Bros. and Donald Horne argue that alleged professional negligence by their previous counsel in the Contribution Litigation denied them a full and fair opportunity to litigate the issues for which preclusion is sought. This argument cannot succeed. If charges of negligent lawyering could thwart collateral estoppel, every motion seeking to preclude relitigation would become a referendum on prior counsel's trial strategy. It is well-established in the Eighth Circuit that a party may be held responsible for the actions of its counsel. *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 596 (8th Cir. 2001). And there is no constitutional or statutory right to effective assistance of counsel in a civil case. *Taylor v. Dickel*, 293 F.3d 427, 431 (8th Cir. 2002). Defendants' dissatisfaction with their former attorneys' performance may be redressed in an action for malpractice, but it can no more free them from the preclusive effect of a prior judgment than it can free them from the judgment itself.

## III.    Conclusion

Accordingly, it is hereby

ORDERED that the USA's Motion for Partial Summary Judgment [Doc. # 41] is

GRANTED in part and DENIED in part.  The Motion is GRANTED insofar as

1) Defendants Donald and Victor Horne, K.C. 1986 Limited Partnership, Donald Boatright, and DeAngelo Brothers, Inc., are ESTOPPED from denying that the Armour Road Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9); that materials located at the Armour Road Site included "hazardous substances" and/or "pollutants or contaminants which may present an imminent and substantial danger to the public health or welfare," within the meaning of sections 101(14), 104, 106, and 107 of CERCLA, 42 U.S.C. §§ 9601(14), 9604, 9606, and 9607; and that a "release" or threatened release of "hazardous substances" into the environment occurred at or from the Armour Road Site, as those terms are defined in sections 101(14) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(14) and 9601(22);

2) Defendants Donald and Victor Horne, Donald Boatright, and DeAngelo Brothers, Inc., are ESTOPPED from denying that they are "operators" of the Armour Road Site under section 107(a) of CERCLA, 42 U.S.C. § 9607;

3) Defendants DeAngelo Brothers, Inc., and K.C. 1986 Limited Partnership are ESTOPPED from denying that they are "owners" of the Armour Road Site under section 107(a) of CERCLA, 42 U.S.C. § 9607.

The Motion is DENIED as to

1)      Defendant  DEH Merrywood; and

2)      Whether, and to what extent, the USA incurred response costs not

        inconsistent with the National Contingency Plan.




                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  February 6, 2006
Jefferson City, Missouri