IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DONALD E. HORNE, ) | |
| VICTOR A. HORNE, ) | Case No. 05-0497-CV-W-NKL |
| K.C. 1986 LIMITED PARTNERSHIP, ) | |
| DEH MERRYWOOD COMPANY, ) | |
| DONALD D. BOATRIGHT, AND, ) | |
| DeANGELO BROTHERS, INC., ) | |
| ) | |
| Defendants. ) | |

ORDER

Pending before the Court is the United States' Motion for Partial Summary Judgment on Response Costs [Doc. # 55], as well as Defendants' Motion for Summary Judgment on the Statute of Limitations [Doc. # 66]. For the reasons set forth below, the United States' Motion is granted in part and denied in part, and the Defendants' Motion is denied.

**I.      Introduction**

This suit is the latest development in nearly ten years of litigation before this Court concerning the clean-up of toxic substances at the Armour Road Superfund Site in North Kansas City, Missouri. The present litigation involves the United States' attempt to recover from the Defendants its response costs for cleaning up the Armour Road Site.

1

The Court has already concluded that all Defendants except DEH Merrywood are estopped from denying that the Armor Road Site is a "facility" within the meaning of CERCLA, that materials located at the Armour Road Site included "hazardous substances" and/or "pollutants or contaminants which may present an imminent and substantial danger to the public health or welfare," and that a "release" or threatened release of "hazardous substances" into the environment occurred at or from the Armour Road Site. ([Doc. # 76] Partial Summary Judgment Order, February 26, 2006). The Court has also concluded that Defendants Donald and Victor Horne, Donald Boatright, and DeAngelo Brothers, Inc., are estopped from denying that they are "operators" of the Armour Road Site; and that Defendants DeAngelo Brothers, Inc., and K.C. 1986 Limited Partnership are estopped from denying that they are "owners" of the Armour Road Site within the meaning of CERCLA. *Id.* Thus, the only element of the United States' case remaining as to all Defendants except DEH Merrywood is whether the United States incurred response costs, and if so, the amount that can be recovered.

**II.     Discussion**

Because Defendants' Motion for Summary Judgment on the Statute of Limitations, if granted, would moot the United States' Motion for Summary Judgement on Response Costs, the Court takes up Defendants' Motion first.

   **A.     Defendants' Motion for Summary Judgment on Statute of Limitations**

On May 16, 1996, the Environmental Protection Agency ("EPA") authorized a cleanup of the Armour Road Site. The first component of the cleanup was to place a

2

cover on contaminated soils and install a fence around the Site. These actions by the EPA at the Armour Road Site constitute a "removal action" within the meaning of CERCLA. *See* 42 U.S.C. § 9601(23). On May 20, 1997, EPA requested an "emergency exemption" to permit the EPA to keep the fence in place to protect the public.

It is undisputed that EPA's removal action was completed no earlier than January 2005. The United States filed its CERCLA § 107(a) action to recover costs associated with its removal activities on May 27, 2005.

### 1. Applicable Statute of Limitations

Because removal actions are often followed by longer-term remedial measures, CERCLA requires that removal actions (1) be completed within 12 months and (2) not exceed $2,000,000, unless EPA determines that one of two available waivers is appropriate. 42 U.S.C § 9604(c)(1). The first waiver is termed an "emergency exemption," and provides that statutory removal limits will not apply where "the President finds that (i) continued response actions are immediately necessary, (ii) there is an immediate risk to public health or welfare or the environment, and (iii) such assistance will not otherwise be provided on a timely basis." 42 U.S.C. § 9604(c)(1)(A); *see also United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1248-49 (9th Cir. 2005) (discussing the emergency exemption at section 104(c)(1)(A) and its requirements).

EPA's second option to continue removal actions is to seek a "consistency exemption." A "consistency" exemption applies if the EPA's proposed plan is appropriate and is consistent with the remedial action which is to follow. 42 U.S.C. §

9604(c)(1)(C). The bases for each waiver are distinguished in EPA's regulations, which set forth the two exemptions in the alternative at 40 C.F.R. §§ 300.415(b)(5)(i) & (ii). The "consistency" exemption was added to CERCLA as part of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub L. No. 99-499, 100 Stat. 1613 (1986), in response to perceived limitations of the "emergency" exemption. The legislative history explained that the "consistency" exemption would "provide an additional and independent criterion for waiving the statutory limits on removal actions . . . ." Administrative Testimony on the Superfund Improvement Act of 1985, S. 51, 99th Cong., at 93, reprinted in 2 Library of Congress, A Legislative History of the Superfund Amendments and Reauthorization Act of 1986, 455, at 547 (1990).

Which exemption EPA chooses has a direct bearing on the statute of limitations that applies to its eventual attempt to recover response costs. The statute of limitations for cost recovery actions brought by the United States under section 107(a) of CERCLA is found at section 113(g)(2)(A). It provides as follows:

> An initial action for recovery of the costs referred to in section 107 must be commenced, for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 104(c)(1)(C).

42 U.S.C. § 9613(g)(2)(A). In plain terms, the six-year statute of limitations is triggered by a request for an exemption under section 104(c)(1)(C), the "consistency" exemption provision. The six years begins to run from the date the "consistency" exemption is granted. All other removal actions, including ones where an "emergency" exemption has

4

been given under section 104(c)(1)(A), are subject to a three year statute of limitations which runs from the date of the completion of the removal action, not the date when the exemption is granted.

In the present case, it is undisputed that the removal action was completed no earlier than January 2005. EPA commenced this action in May 2005, well within three years of completion of the removal action. Therefore, unless EPA's waiver was requested under the "consistency" exemption, EPA's action is subject to the three-year statute of limitations, triggered by the date of the completion of the removal action, and is timely. If, on the other hand, EPA's requested waiver was sought under the "consistency" exemption, the action had to be filed within six years of the waiver, or by May 2003. In that case, EPA's action is time-barred. Thus, the issue of which exemption EPA used is dispositive of Defendants' Statute of Limitations argument.

### 2. Consistency or Emergency Exemption?

EPA records the grounds upon which it seeks one of the two waivers in an Action Memorandum. *See, e.g., Grace*, 429 F.3d at 1230-31. For the EPA's Initial Removal Action at the Armour Road Site, EPA explicitly requested an "emergency" exemption, citing the three elements of CERCLA section 104(c)(1)(A), 42 U.S.C. § 9604(c)(1)(A). *See* Def. Ex. 3 (May 20, 1997 Request for an Emergency Exemption at the 2251 Armour Road Site). The Agency determined (1) that there was an "immediate risk to public health or welfare or the environment," (2) that continued response was immediately necessary to prevent the public from entering highly contaminated areas, and (3) that the

5

state and local governments were unwilling to continue the response action. *Id.* at 2. This is the only evidence before the Court bearing on the issue of which exemption EPA intended to use.

Rather than trying to show directly that the EPA intended to use the "consistency" exemption, Defendants claim that the EPA must have been relying on the "consistency" exemption because it did not meet the requirements for an "emergency" exemption. Defendants suggest that the "emergency" exemption was inapplicable to the Armour Road Site because (1) there was no emergency, (2) EPA did not immediately respond to the emergency even if there was one, and (3) other parties were available to provide assistance on a timely basis. And if EPA did not have the authority to invoke the "emergency" exemption, Defendants contend that EPA must have used the "consistency" exemption instead or its removal action in excess of 12 months or $2,000,000 was *ultra vires*. This line of reasoning fails for several reasons.

First, EPA's determination regarding the appropriateness of the "emergency" exemption can only be set aside if the determination was arbitrary and capricious. *See Grace*, 429 F.3d at 1248; 5 U.S.C. § 706(2). Second, even assuming that Defendants could prove EPA's determination was arbitrary and capricious, the three year statute of limitations would still apply, because the three year statute of limitation applies equally to cases in which EPA seeks an "emergency" exemption as it does to cases in which EPA does not. Only if EPA seeks a "consistency" exemption does the statute of limitations change to six years from the date of the exemption. Defendants have presented no

6

evidence in the record that EPA actually sought and received a "consistency" exemption. Instead, the record shows that the EPA received an "emergency" exemption.

Nevertheless, Defendants argue that if the request for an "emergency" exemption fails arbitrary and capricious review, the Court must then treat EPA's request for an "emergency" exemption as a request for a "consistency" exemption instead. Defendants' argument would effectively transform the "consistency" exemption into the default exemption and, consequently, transform the six-year statute of limitations provided by Section 113(g)(2)(A) into the default statute of limitations. But the plain language of Section 113(g)(2)(A) makes the three-year statute of limitations, running from the end of the clean up, the default CERCLA statute of limitations. The alternative six-year statute of limitations, running from the date a "consistency" exemption waiver is requested under Section 104(c)(1)(C), is a very limited exception to that general rule. Defendants' argument would turn Section 113(g)(2)(A) on its head by making that single exception into the default.

In the alternative, Defendants argue that EPA's removal action was *ultra vires* because it lacked the authority to invoke the "emergency" exemption under the facts of this case. Whatever the merits of that argument, it implicates a separate defense not raised in the Motion for Summary Judgment; namely, that EPA's removal action exceeded the 12 month, $2,000,000 limits imposed by 42 U.S.C § 9604(c)(1) and 40 C.F.R. § 300.415(b)(5) and is, therefore, inconsistent with the National Contingency Plan ("NCP"). *See* 42 U.S.C. § 9607(a)(4)(A); *Union Pac. R.R. v. Reilly Indus.*, 215 F.3d 830,

839 (8th Cir. 2000) ("[D]efendants have the burden of proving that the costs incurred were inconsistent with the NCP, an issue that is judicially reviewed under the arbitrary and capricious standard of review for agency action."). Defendants have moved for Summary Judgement solely on the Statute of Limitations. Indeed, they did not even raise the argument that EPA's conduct was *ultra vires* until they filed their Reply Suggestions. It would be inappropriate to grant summary judgment on a defense not even raised in Defendants' initial Motion for Summary Judgment.

> **B.     United States' Motion for Summary Judgment on Response Costs**

As previously indicated, the only remaining issue in this case is whether the United States incurred response costs for the Armour Road Site cleanup, and if so, the amount. There are no disputed issues of fact on these issues.[1]

The United States did incur response costs within the meaning of CERCLA. Total response costs incurred by the United States for their removal action through June 30, 2005, including prejudgment interest calculated as of December 31, 2005, are $337,363.97. Although the Defendants disputed an earlier figure for total response costs cited in the United States' Suggestions in Support of it Motion for Summary Judgment on Response costs, the United States has conceded the errors cited by Defendants and

---

[1] In their Suggestions in Opposition, Defendants contested a few of the facts presented by the United States. In its Reply Suggestions, however, the United States has conceded the errors cited by Defendants and acquiesced to Defendants' version of the facts. Thus, there are no remaining disputes of material fact precluding summary judgment.

8

recalculated its recovery costs in accord with Defendants' position.[2] Thus, there remains no dispute as to the total costs incurred as of December 31, 2005.

### 1. Liability for Response Costs

Section 107(a) of CERCLA authorizes the United States to recover from liable parties "all costs of removal or remedial action incurred by the United States . . . not inconsistent with the National Contingency Plan." 42 U.S.C. §9607(a). "Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA. The applicable standard of review is whether the agency's choice is arbitrary and capricious." *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 748 (8th Cir. 1986). The United States has submitted detailed cost summaries, supporting data, and other competent evidence to support its claim for recovery of response costs. These documents are sufficient to make a *prima facie* case that the United States is entitled to recover the costs incurred. *See United States v. Chromalloy Am. Corp*., 158

---

[2]In its original Suggestions, the United States calculated its total costs, including prejudgment interest, at $351,779.40 as of June 30, 2005. In their Suggestions in Opposition, Defendants challenged the calculation of $99,942.58 in indirect costs because the United States improperly included direct costs incurred by the Agency for Toxic Substances and Disease Regulation (ATSDR) in its calculation. This error increased indirect costs by $12,669.82. The United States has conceded the error and recalculated indirect costs at $87,795.99. This new total also reflects a change from provisional indirect rates to final indirect rates which occurred during the briefing cycle of this motion. Defendants were aware of this rate change at the time they filed their Suggestions in Opposition and did not object. The United States has also adjusted the costs incurred by the Department of Justice (DOJ) as of June 30, 2005 ($49,086.23) to reflect additional costs incurred as of September 30. 2005 ($50,118.42). Finally, the United States has recalculated prejudgment interest as of December 31, 2005, based on the correct calculation of indirect costs, which includes the adjusted costs incurred by DOJ. Defendants have not challenged the new calculation.

9

F.3d 345, 352 (5th Cir. 1998). As long as the government's choice of response is consistent with the NCP, costs are presumed to be recoverable. *See Northeastern Pharm. & Chem. Co.*, 810 F.2d at 748. Other than the discrepancies cited in footnote 4, which the United States has since rectified, Defendants do not dispute any of the government's evidence relating to response costs or argue that the costs were inconsistent with the NCP.[3] *See United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000) (defendants have the burden to show response costs are inconsistent with the NCP). Because the United States has made out its *prima facie* case, which Defendants have not refuted, the Court concludes that the United States is entitled to recover its response costs.

## 2. Credit for the Boatright Settlement

Defendants argue that the amount of any judgment against them must be reduced by an amount recovered from Defendant Donald Boatright through a Consent Judgment lodged with the Court on June 6, 2006 [Doc. # 84]. Under the terms of the Consent Judgment, Boatright agreed to pay the United States $175,000 in response costs, of which $100,000 "shall be applied to reduce the claims the United States has as to response costs incurred prior to lodging of this Consent Decree." CERCLA provides that settlement for partial response costs by one responsible party "does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." 42 U.S.C. § 9613(f)(2). The United States concedes that the Consent Judgment against Boatright should reduce the amount

---

[3]Defendants raise the same statute of limitations argument in their Suggestions in Opposition that they raised in their own Motion for Summary Judgment, which the Court has already addressed.

10

recoverable from the remaining Defendants, as long as Boatright actually pays his debt and assuming the liability of the Defendants is joint and several.

The Court finds no basis in the language of Section 9613(f)(2) to qualify the offset of the Boatright Consent Judgment. The statute says that settlement by one party reduces the amount recoverable from the others. That offset counterbalances the protection the settling party gets against actions for contribution by the other defendants. *See id*. ("A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."). There is no provision that the offset occurs only after the settling defendant pays in cash. As there is no dispute of fact on this issue, the Court concludes that the amount sought from the Defendants in the present Motion must be offset by $100,000 to reflect the recovery the United States has obtained from Defendant Boatright. Thus, the judgment for the United States should be $237,363.97.

### 3. Joint and Several Liability and Future Recovery Costs

Although the government asked in its original motion for a declaration that the liability assessed against the Defendants is joint and several, the United States withdraws that request in its Reply Suggestions in favor of resolving the issue in subsequent briefing. It does still ask, however, for a declaration that the parties are liable for future recovery costs under 42 U.S.C. § 9613(g)(2) ("In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further

response costs or damages."). Because the Court has found Defendants liable for response costs incurred by the United States, this Judgment shall be binding on these Defendants in any subsequent action by the United States to recover further responses costs, subject the statute of limitations or other applicable defenses.

**III.    Conclusion**

Accordingly, it is hereby

ORDERED that the United States Motion for Partial Summary Judgment on Response Costs [Doc. # 55] is GRANTED in PART and DENIED in PART. The Motion is GRANTED insofar as Defendants are found liable for response costs incurred by the United States in the amount of $237,363.97. The Motion is DENIED WITHOUT PREJUDICE as to joint and several liability. It is further

DECLARED that this Judgment of liability against Defendants shall be binding on them in any future action by the United States to recover additional response costs at the Armour Road Site, subject to any defenses available to Defendants. And it is

ORDERED that Defendants' Motion for Summary Judgment on the Statute of Limitations [Doc. # 66] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 29, 2006
Jefferson City, Missouri