IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DONALD E. HORNE, ) | |
| VICTOR A. HORNE, ) | Case No. 05-0497-CV-W-NKL |
| K.C. 1986 LIMITED PARTNERSHIP, ) | |
| DEH MERRYWOOD COMPANY, ) | |
| DONALD D. BOATRIGHT, AND, ) | |
| DeANGELO BROTHERS, INC., ) | |
| ) | |
| Defendants. ) | |

ORDER

On August 29, 2006, the Court resolved through partial summary judgment [Doc. # 112] all remaining issues in the United States' case in chief against Defendants Donald and Victor Horne, K.C. 1986 Limited Partnership, and DeAngelo Brothers, Inc. ("Defendants").[1] Although the Court found these Defendants liable to the United States in the amount of $237,363.97, it declined at that time to decide whether those damages were divisible, an issue for which Defendants bear the burden of proof. The United States has now filed a Motion for Summary Judgment on Divisibility [Doc. # 101], and Defendants have filed a Cross Motion for Summary Judgment on Divisibility [Doc. #

---

[1]The United States has settled its case with Defendant Donald Boatright [Doc. # 110]. The Court has not yet resolved any issues of liability as to Defendant DEH Merrywood Company, the subject of a still pending Motion for Summary Judgment [Doc. # 103].

1

105], both of which are now fully briefed. The Court concludes that the United States' Motion must be granted and Defendants' Motion denied.

## I. Background[2]

### A. The United States' Environmental Response

Over the last 80 years, there has been widespread and commingled arsenic contamination to soils at the Armour Road Superfund Site in North Kansas City, Missouri. In 1996, the United States initiated a comprehensive removal action at the Site directed at the removal of as much contaminant mass as possible, without regard to contaminant type or toxicity, within the Site boundaries to the clay/sand interface which occurs at the average depth of 23 feet throughout the Site. All soils within the Site boundaries were removed to the extent that they could be removed without undermining adjacent structures and roadways, and all of the soils were disposed of in the same manner. Response actions at the Site were driven primarily by arsenic contamination and cannot be differentiated based on the different arsenic compounds used. As with the Site soils, the contaminants within the groundwater plume are commingled, and while speciation may be possible, such an effort would have no likely effect on how the groundwater contamination will be responded to by EPA, or the costs of such response.

### B. Contribution Litigation and the Allocation Order

---

[2]In ruling on this Summary Judgment Motion, the Court has considered the undisputed facts and viewed the disputed facts in the light most favorable to the Defendants.

In Moving for Partial Summary Judgment on Liability earlier in this case, the United States invoked the doctrine of issue preclusion to estop Defendants from relitigating many of the issues decided against them in *K.C. 1986 Ltd. P'ship v. Reade Mfg. Co.*, Civ. No. 02-0853 (W.D. Mo.) (the "Contribution Litigation").[3] In that case, U.S. Borax, another party responsible for the arsenic contamination at the Armour Road Site, sued many of the current Defendants for contribution over its own clean-up costs. On January 7, 2005, this Court entered an Allocation Order equitably dividing contribution liability among the parties. *See* January 7, 2005 Allocation Order [Doc. # 399] (the "Allocation Order") in the Contribution Litigation. In its present motion for Summary Judgment on Divisibility, the United States offers the following additional facts as found in the Allocation Order, which Defendants do not dispute even though they have not been estopped from doing so.

From 1929 to 1963 ("the Reade Era"), Reade Manufacturing Co. ("Reade") operated an herbicide manufacturing plant and contributed arsenic contamination to the Site, the level of which, however, the Court found "impossible to determine." Allocation Order, at 6. From 1963 to 1968 ("the Borax Era"), when U.S. Borax ("Borax") leased Reade's facilities for the purpose of manufacturing herbicides, arsenic contamination occurred at the Site; however, the Court found that "it is not possible to quantify how much arsenic contamination occurred during the Borax Era." *Id.* at 7. From 1968 to 1986 ("the Habco Era"), Habco received varying quantities of herbicides containing pure

---

[3]The Contribution Litigation is pending on appeal before the Eighth Circuit in Case No. 05-2064.

elemental arsenic. *Id.* at 10. Habco's operations at the Site resulted in periodic leaks and spills of arsenic. *Id.* at 10. These leaks and spills resulted from various sources. *Id.* at 10. As during the prior Eras, the volume of leakage and spillage from these sources was found to be unquantifiable based on the record before the Court in that case. *Id.* at 43. Additional leakage and spills occurred during the K.C. 1986 Era, but the Court concluded that it could not "rationally quantify the contamination . . . during the K.C. 1986 Era." *Id.* at 46 & n.3. The Court's Allocation Order estimated, as one aspect of an equitable allocation, the quantity of arsenic imported to the Site by each party. *Id.* at 5. The Allocation Order did not purport to determine the degree to which each or any of the Defendants' actions contributed to the environmental harm at the Site or the response costs thereby incurred. *Id.* at 43. The Court concluded that "it is impossible to determine how each individual action of the parties increased or decreased the actual contamination at the Site in any quantifiable way." *Id*.

In their response to the United States' Motion for Summary Judgment on Divisibility and in support for their own Cross Motion, Defendants cite to portions of the Allocation Order.[4] Specifically, Defendants cite the Court's discussion of the amounts of

---

[4] Because the United States was not a party to the Contribution Litigation, it is not bound by any of the facts found in the Allocation Order. *See Baker by Thomas v. GMC*, 522 U.S. 222, 238 n. 11 (1998) ("In no event, . . . can issue preclusion be invoked against one who did not participate in the prior adjudication."). Defendants claim they are not attempting to bind the United States with any findings of fact from the Allocation Order. Rather, they offer the Allocation Order as some evidence that volumetric divisibility of liability among the parties is reasonable in this case.

4

arsenic imported to the Site by each Defendant, as well as the Court's ultimate determination of each Defendant's contribution liability based on those amounts.

### C. Defendants' Discovery Responses

In Defendants' responses to the United States' Interrogatory No. 13, which requested that Defendants state "all facts which support any contention . . . that the environmental harm presented at the Site is distinct," Defendants offered no evidence other than the Allocation Order from the Contribution Litigation. In response to the United States' Interrogatory No. 14, which requested that Defendants state "all facts which support any contention . . . that there is a basis for apportioning causation for a single harm . . . [and] the specific apportionment you claim those facts support," Defendants again produced no evidence other than the Allocation Order. Defendants have neither retained nor identified any experts to testify as to either distinct harms or as to apportioning causation for a single harm.

## II. Legal Framework

The Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), "authorizes the federal government to respond to any threatened or actual release of any hazardous substance that may pose an imminent and substantial public health threat." *United States v. Hercules, Inc.*, 247 F.3d 706, 715 (8th Cir. 2001); 42 U.S.C. § 9604. The United States may subsequently recover its response costs from any defendants falling within one of the four categories of

5

responsible parties enumerated in 42 U.S.C. § 9607(a).  *Hercules*, 247 F.3d at 715.  Liability for those response costs is "strict and . . . typically joint and several.  *Id*.; *United States v. Northeastern Pharmaceutical & Chem. Co.* (NEPACCO)., 810 F.2d 726, 732 n. 3 (8th Cir. 1986).

As the Eighth Circuit has noted, the role of causation in CERCLA's statutory scheme "has long vexed courts" because "the language of the statute does not require the government to prove as part of its prima facie case that the defendant caused any harm to the environment."  *Hercules*, 247 F.3d at 715-16.  To clarify the issue, the Eighth and other Circuit Courts of Appeals have recognized the defense of divisibility of harm, a "'special exception to the absence of causation requirement' that in effect brings causation principles 'back into the case -- through the backdoor, after being denied entry at the front door.'"  *Id.* at 716 (quoting *United States v. Alcan Alum. Corp. (Alcan II)*, 990 F.2d 711, 722 (2nd Cir. 1993)).  "Once the government has established the four essential elements of liability the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, that there exists a reasonable basis for divisibility."  *Hercules*, 247 F.3d at 717.

In considering a divisibility of harm defense in CERCLA cases, the Eighth Circuit looks to the Restatement (Second) of Torts "to the extent that it is compatible with the provisions of CERCLA."  *Hercules*, 247 F.3d at 717.  Proving divisibility is a "very difficult proposition," and the Restatement recognizes that some harms, "by their nature, are normally incapable of any logical, reasonable, or practical division."  *Id.* (quoting

6

responsible parties enumerated in 42 U.S.C. § 9607(a).  *Hercules*, 247 F.3d at 715.  Liability for those response costs is "strict and . . . typically joint and several.  *Id*.; *United States v. Northeastern Pharmaceutical & Chem. Co.* (NEPACCO)., 810 F.2d 726, 732 n. 3 (8th Cir. 1986).

As the Eighth Circuit has noted, the role of causation in CERCLA's statutory scheme "has long vexed courts" because "the language of the statute does not require the government to prove as part of its prima facie case that the defendant caused any harm to the environment."  *Hercules*, 247 F.3d at 715-16.  To clarify the issue, the Eighth and other Circuit Courts of Appeals have recognized the defense of divisibility of harm, a "'special exception to the absence of causation requirement' that in effect brings causation principles 'back into the case -- through the backdoor, after being denied entry at the front door.'"  *Id.* at 716 (quoting *United States v. Alcan Alum. Corp. (Alcan II)*, 990 F.2d 711, 722 (2nd Cir. 1993)).  "Once the government has established the four essential elements of liability the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, that there exists a reasonable basis for divisibility."  *Hercules*, 247 F.3d at 717.

In considering a divisibility of harm defense in CERCLA cases, the Eighth Circuit looks to the Restatement (Second) of Torts "to the extent that it is compatible with the provisions of CERCLA."  *Hercules*, 247 F.3d at 717.  Proving divisibility is a "very difficult proposition," and the Restatement recognizes that some harms, "by their nature, are normally incapable of any logical, reasonable, or practical division."  *Id.* (quoting

6

Restatement (Second) of Torts § 433A cmt. to subsection (2)). "Where this is the case, the Restatement cautions against making an 'arbitrary apportionment for its own sake.'" *Id*.

The Restatement provides for the apportionment of damages among two or more parties when at least one is able to show either (1) "distinct harms" or (2) a "reasonable basis for determining the contribution of each cause to a single harm." *Id.*; Restatement (Second) of Torts § 433A. Divisibility due to "distinct harms" requires evidence that the harm was caused by "separate injuries." *Id.* "Defendants may be able to demonstrate that harms are distinct based on geographical considerations, such as where a site consists of 'non-contiguous' areas of soil contamination, or separate and distinct subterranean 'plumes' of groundwater contamination. *Id.* at 717-18.

By contrast, a "single harm" is divisible only if it is possible to discern the degree to which different parties contributed to the damage. *Id.* at 718. In such cases, it must be "clear that each [defendant] has caused a separate amount of harm, limited in time, and that neither has any responsibility for the harm caused by the other," such as where "two defendants, independently operating the same plant, pollute a stream over successive periods of time." *Id.* (quoting *In re Bell Petroleum Servs.*, 3 F.3d 889, 895 (5th Cir. 1993)). Single harms may also be treated as divisible in terms of degree, based, for example, on the relative quantities of waste discharged into the stream. *Id.* Divisibility of this type may be provable even where wastes have become cross-contaminated and commingled, for "commingling is not synonymous with indivisible harm." *Id*. (quoting

7

*United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2nd Cir. 1993)). In any event, however, "[e]vidence supporting divisibility must be concrete and specific," and determining whether the harm to the environment is capable of apportionment among two or more causes is a question of law. *Id.* If the Court concludes that apportionment between multiple causes is possible, the actual apportionment is a question of fact. *Id.*

Finally, the Eighth Circuit has explained that "the divisibility doctrine is conceptually distinct from contribution or allocation of damages." *Id.*; *Redwing Carriers v. Saraland Apts.*, 94 F.3d 1489, 1513 (11th Cir. 1996). For example,

> At the allocation phase, the only question is the extent to which a defendant's liability may be offset by the liability of another; the inquiry at this stage is an equitable one and courts generally take into account the so-called "Gore factors." See 42 U.S.C. § 9613(f) (providing that a court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate") The divisibility of harm inquiry, by contrast, is guided not by equity–specifically, not by the Gore factors–but by principles of causation alone. Thus, where causation is unclear, divisibility is not an opportunity for courts to split the difference in an attempt to achieve equity. Rather, if they are in doubt, district courts should not settle on a compromise amount that they think best approximates the relative responsibility of the parties. In such circumstances, courts lacking a reasonable basis for dividing causation should avoid apportionment altogether by imposing joint and several liability.

*Hercules*, 247 F.3d at 718-719 (internal quotations omitted).

### III. Analysis

In order to avoid the "typical" rule of joint and several liability in the present CERCLA action, Defendants must prove by a preponderance of the evidence that the contamination of the Armour Road Site was caused by "distinct harms" or that there is a "reasonable basis for determining the contribution of each cause to a single harm."

Restatement (Second) of Torts § 433A; *Hercules*, 247 F.3d at 717. As Defendants do not claim (nor is there any evidence to support a finding of) distinct harms, this case turns on whether Defendants can demonstrate a reasonable basis for determining that each of them "caused a separate amount of harm, limited in time, and that neither has any responsibility for the harm caused by the other." *Id.*

Defendants' only support for their argument that causation can be so apportioned in the present case is this Court's Allocation Order from the Contribution Litigation and the expert testimony and report of Dr. Arthur C. Riese, submitted in that case by U.S. Borax, who is not a party to the present litigation. Dr. Riese has not been retained as an expert by Defendants, he was not designated as an expert in the present case, and the United States did not have the opportunity to depose him. Not only are his testimony and report inadmissible as hearsay, but Defendants' failure to disclose its intent to use Dr. Riese's testimony precludes its use under the Federal Rules of Civil Procedure. Rule 26 provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). The Rule further provides that "[t]hese disclosures shall be made at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). Finally, Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

As for the Allocation Order itself, the parties dispute the scope of its influence in the present case. The United States correctly argues that any factual findings in that Order are not binding on the government in the present case because it was not a party to the Contribution Litigation.[5] See *Baker by Thomas v. GMC*, 522 U.S. 222, 238 n. 11 (1998) ("In no event, . . . can issue preclusion be invoked against one who did not participate in the prior adjudication."). Defendants insist that they are not attempting to estop the United States with specific factual findings, but rather offering the Allocation Order itself as evidence of that causation is reasonably divisible.

Whatever the admissibility or preclusive effect of the Allocation Order, it offers little support to the Defendants' divisibility defense. The Court's allocation of liability in the Contribution Litigation turned on its analysis of the Gore factors and principles of equity. *See* Allocation Order, at 41-43. Indeed the Court specifically noted in that Order that it was "impossible to determine how each individual action of the parties increased or decreased the actual contamination at the Site in any quantifiable way." *Id.* at 34. As the Eighth Circuit has explained, "[t]he divisibility of harm inquiry, [as opposed to the

---

[5]Defendants argue that they should be allowed to use the Allocation Order as a shield in this case because the United States used it as a sword against them in establishing their liability. While there is some intuitive appeal to Defendants' argument, it does not reflect the present state of the law. "Originally, collateral estoppel was limited by the principle of mutuality, which provided that 'neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment.'" *Banks v. Int'l Union Elec., Elec., Tech., Sallaried & Mach. Workers*, 390 F.3d 1049, 1054 (8th Cir. 2004). But "[u]nder federal law, the mutuality requirement has long been abandoned and a party may now rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action." *Id.* (internal quotations omitted).

10

allocation of contribution liability], is guided not by equity–specifically, not by the Gore factors–but by principles of causation alone." *Hercules*, 247 F.3d at 718-19.  Because the Allocation Order was concerned with equity rather than causation, it sheds little if any light on the issues relevant to the present inquiry.

Ultimately, Defendants argue that comparing the percentages of arsenic shipped to the Site by each Defendant is a reasonable basis for apportioning liability in this case. Indeed, courts have found volumetric divisibility appropriate in some CERCLA cases. *See, e.g., In re Bell Petroleum Servs.*, 3 F.3d 889, 904 (5th Cir. 1993).  However, the only evidence Defendants have offered in support of their argument is the inadmissible expert testimony of Dr. Riese from the Contribution Litigation, and the equitable allocation of liability in the Allocation Order.  Even if the factual findings from the Allocation Order as to the amounts of arsenic imported to the Site by each Defendant were binding on the United States–which they decidedly are not–there is no evidence that the amount of arsenic imported corresponds in any way to the amount of arsenic contamination actually caused by each Defendant.

Defendants bear the burden of proof for divisibility, but they have offered no evidence–let alone a preponderance–that there is a reasonable basis for apportioning causation among them.  Their divisibility defense therefore fails as a matter of law and each Defendant is jointly and severally liable.

### III.  Conclusion

Accordingly, it is hereby

11

ORDERED that the United States' Motion for Summary Judgment on Divisibility [Doc. # 101] is GRANTED and the Defendants' Cross Motion for Summary Judgment on Divisibility [Doc. # 105] is DENIED. Defendants are JOINTLY AND SEVERALLY LIABLE.

<pre>
                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge
</pre>

Dated: September 22, 2006
Jefferson City, Missouri